UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

SARAH ANN TOLLIVER

Plaintiff,

- against -

SUFFOLK COUNTY WATER AUTHORITY and STEVEN
GALANTE (Sued In His Individual Capacity Pursuant to
New York Executive Law §290 *et seq*),

Defendants.

CV: 21-5085

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff, SARAH ANN TOLLIVER ("Plaintiff"), by her attorneys SCOTT MICHAEL

MISHKIN, P.C., hereby complain of Defendants SUFFOLK COUNTY WATER AUTHORITY

("SCWA") and STEVEN GALANTE ("Galante") (collectively referred to as "Defendants"), as

follows:

## PRELIMINARY STATEMENT

This action is brought by plaintiff as for and against SCWA for employment

discrimination based on race and age and retaliation due to her engagement in protected activity

pursuant to: (i) Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e, *et seq.* ("Title

VII"); and pursuant to (ii) the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §

621 *et seq.,* (iii) New York State Human Rights Law, New York Executive Law §§290, *et seq.*

("NYEL") and against Galante for employment discrimination based on race and age and

retaliation due to her engagement in protected activity pursuant to (iii) New York State Human

Rights Law, New York Executive Law §§290, *et seq.* ("NYEL").

## JURISDICTION

FIRST:        This Court has jurisdiction under 28 U.S.C. §1331 and 28 U.S.C. §1343, and supplemental jurisdiction over Plaintiffs' pendant claims brought under NYEL pursuant to 28 U.S.C. §1367(a) as they arise from the same events and controversy.

## VENUE

SECOND:        Venue is appropriate in this District pursuant to 28 U.S.C. §1391 because Defendant conducts business within this District as well as this District being where the causes of action arose.

THIRD:        The unlawful practices alleged below were committed within the State of New York, County of Suffolk.

FOURTH:        The locations at which the causes of action arose are in the County of Suffolk in ther Eastern District of New York.

FIFTH:        The main office of the SCWA is located at 4060 Sunrise Highway, Oakdale, New York 11769.

## PARTIES

SIXTH:        Plaintiff is an African-American female over the age of Forty (40) residing in Central Islip, New York.

SEVENTH:        Plaintiff was an "employee" as defined by the ADEA, Title VII and NYEL.

EIGHTH:        At all relevant times to this action, defendants were the plaintiff's "employer" as defined by the ADEA, Title VII and NYEL, in that they engaged in an industry affecting commerce and employed fifteen (15) or more employees for each working day in each of twenty (20) or more calendar weeks.

2

NINTH:      Defendant SCWA is an independent public-benefit corporation operating under the authority of the Public Authorities Law of the State of New York.

TENTH:      The SCWA is a supplier of ground water and serves the residents of Suffolk County, New York.

ELEVENTH: At all times relevant to this action, Galante was the SCWA's Director of IT and Plaintiff's supervisor.

TWELFTH:   Galante has and had the authority to assist in the hiring, firing and disciplining of employees at SCWA.

THIRTEENTH:      Galante has and had the power to do more than carry out personnel decisions made by others and is thereby individually liable for his willful discriminatory and retaliatory actions.

FOURTEENTH:      Galante aided, abetted, incited, controlled, compelled, and/or coerced the acts against Plaintiff.

FIFTEENTH: Galante actually participated in the conduct giving rise to Plaintiffs' claims and is thereby individually liable for his willful discriminatory and retaliatory actions.

SIXTEENTH: Galante, in a supervisory position, willfully and with the malicious intent to cause Plaintiff harm, discriminated against Plaintiff due to her race and/or age and retaliated against plaintiff for her engagement in protected activity.

SEVENTEENTH:      Galante had personal involvement in unlawfully discriminating against Plaintiff and is therefore personally liable.

## **FACTS**

EIGHTEENTH:        In December 2001, plaintiff was hired for the full-time position in SCWA's Information Technology ("IT") Department; with the position responsibility of supporting SCWA's other Departments.

NINETEENTH:        Plaintiff always excelled at her job and was never written up for any performance issues.

TWENTIETH:        In August 2018, Galante was hired as SCWA's Director of IT.

TWENTY-FIRST:        Almost immediately, Galante began treating plaintiff in a disparate way as compared to her similarly situated White co-workers and her similarly situated younger co-workers.

TWENTY-SECOND: One of Galante's first disparate actions against Plaintiff due to her race and age, pertained to SCWA's Flex Hours Policy Program ("Program"), which permitted a SCWA employee flex time for personal reasons such as to avoid traffic, or take a child on/off the school bus.

TWENTY-THIRD:        Plaintiff had been approved for SCWA's Flex Hours Policy Program 113 for over ten years.

TWENTY-FOURTH: After Galante was hired, he revoked only Plaintiff's participation in the Program while approving her similarly situated White and younger co-workers use of the Program.

TWENTY-FIFTH:        Plaintiff formally complained to Galante about his disparate treatment against her.

4

TWENTY-SIXTH:    Galante told plaintiff that he did not care about her needs to work earlier hours that would permit her to take/pickup her son to/from the school bus and that she should complain to SCWA's Human Resource Department ("HR").

TWENTY-SEVENTH:    SCWA's Chief Human Resources Officer, Donna Mancuso ("Mancuso"), ignored plaintiff's repeated requests to meet and Plaintiff had to meet with a different HR Officer.

TWENTY-EIGHTH: After several meetings with SCWA's Human Resources Officer, Mike Dileone ("Dileone"), Galante was directed to approve Charging Party's participation in the Program as he had with Charging Party's similarly situated White younger co-workers, demonstrating the disparate treatment Plaintiff was being subjected to.

TWENTY-NINTH:   However, due to Plaintiff's engagement in protected activity, Galante began to take adverse actions against Plaintiff and began to retaliate against her in the work place with the intent to cause harm to her career.

THIRTIETH: Galante changed the terms of Plaintiff's employment by removing Plaintiff from reporting directly to him, and requiring her to report to a Networking Manager.

THIRTY-FIRST:    Since Plaintiff did not have any Networking experience this change in the terms of Plaintiff's employment was clearly due to retaliation and that Plaintiff was an a Black woman over the age of Forty (40).

THIRTY-SECOND:  Galante did not have any of Plaintiff's similarly situated White younger co-workers removed from reporting directly to him, only Plaintiff, demonstrating retaliatory animus.

THIRTY-THIRD:    After Plaintiff engaged in protected activity, Galante rarely spoke with her, and refused to meet with her violating SCWA's Open-Door policy.

5

THIRTY-FOURTH:  Galante continued to speak with and meet with Plaintiff's similarly situated younger White co-workers, which caused Plaintiff to suffer an uncomfortable work environment, humiliation and embarrassment.

THIRTY-FIFTH:   Galante's retaliation against Plaintiff and discrimination against her due to the color of her skin and age was furthered when, on or about September 5, 2019, he moved Plaintiff out of the building she had regularly worked, to another Department to perform assorted projects and told Plaintiff her removal from the building was a temporary Three (3) month move.

THIRTY-SIXTH:   Galante's adverse action against Plaintiff was carried out with the intent to cause harm to her career as he knew the projects he assigned Plaintiff to fulfill required a skill set in which she did not possess and when Plaintiff requested to be trained, she was denied.

THIRTY-SEVENTH: And in a further act of retaliation and discrimination due to her age and race, at the end of the "temporary" move, Galante refused to return Plaintiff to the building and her desk in IT.

THIRTY-EIGHTH:   Plaintiff's involuntary retaliatory removal from the building that she had worked in for years before Galante began working in the same building, clearly demonstrated Galante's retaliatory animus towards Plaintiff due to her formal complaint against him to Mancuso.

THIRTY-NINTH:   Plaintiff formally complained to SCWA's Chief Counsel Timothy Hopkins (Hopkins) that she was being retaliated against by Galante and that he was taking the adverse action of not permitting her to go back to SCWA's IT Department.

FORTIETH:   Upon information and belief, Hopkins directed Galante to place Plaintiff back in SCWA's IT Department.

FORTY-FIRST:   And to further demonstrate Galante's racial and age discrimination, before removing Plaintiff from the building with the plan of never bringing her back, Galante hired only White males under the age of thirty-five (35) demonstrating that, based on the totality of circumstances, his adverse action against Plaintiff was more likely than not motivated with discriminatory and retaliatory intent.

FORTY-SECOND:   Galante's next discriminatory and retaliatory adverse action against Plaintiff occurred when, for no legitimate business reason, he told Plaintiff she would no longer work with the SAP migration from Oracle to Hana despite being the only Oracle DBA at SCWA.

FORTY-THIRD:   As a result of Galante's ongoing discriminatory adverse treatment against Plaintiff, on or about December 30, 2019, Plaintiff filed a formal complaint with Mancuso complaining of race and age discrimination against her by Galante.

FORTY-FOURTH:   Plaintiff made it clear, based on the adverse actions already described herein, that as an older African American it was clear Galante was discriminating against her due to her race and age and requested an immediate investigation into Galante's discriminatory and retaliatory actions against her.

FORTY-FIFTH:   On January 2, 2020, Mancuso advised and acknowledged to Plaintiff that she received her formal complaint of race and age discrimination and that SCWA would review and look into her allegations and that Mancuso would then meet with Plaintiff to discuss.

FORTY-SIXTH:      Mancuso also advised Plaintiff that the SCWA took her formal complaint of race and age discrimination seriously and would handle the review quickly and in a confidential manner and that confidentiality would be maintained to the extent practicable.

FORTY-SEVENTH: Mancuso never followed up with Plaintiff but instead, directed Plaintiff to meet with two of SCWA's attorneys, without her own representation.

FORTY-EIGHTH:      Afraid of being held insubordinate, on January 22, 2020, Plaintiff met with SCWA's attorneys, John Milazzo (Milazzo) and Hopkins, where Hopkins interrogated Plaintiff with three pages of questions, and by asking Plaintiff the same questions in different ways over a two-hour period.

FORTY-NINTH:      At the end of the two-hour inquisition, Milazzo told Plaintiff that he and Hopkins had enough to complete the investigation and then Hopkins interrupted him and said, they needed to meet again and that he needed to gather questions and speak with Galante and reiterated that they must meet again.

FIFTIETH:      Plaintiff once again made it clear that Galante's discriminatory actions against her have caused a hostile work environment for her and a very difficult time for her in the work place.

FIFTY-FIRST:      Plaintiff suggested that she work from home to be away from Galante, to which SCWA's attorneys advised would be considered as a remedy.

FIFTY-SECOND:      During the second meeting with Milazzo and Hopkins, both advised that they were aware of Plaintiff's formal complaint and that Hopkins was going to get the things she requested, that being to work from home.

FIFTY-THIRD:     Upon completion of the second inquisition, Plaintiff asked Hopkins how long it would be to conclude their investigation and he told her had other things to do but that her case was his top priority and it would take roughly two weeks.

FIFTY-FOURTH:     As a result of Plaintiff's December 30, 2019, engagement in protected activity, Galante enhanced his retaliatory adverse treatment against Plaintiff by assigning her to support Virtual Meeting Requests without providing training or ample time for her to learn the project and by directing her to support a meeting with SCWA's CEO Szabo even though Galante knew Plaintiff would be out of the office attending her Aunt's funeral (victim of COVID-19).

FIFTY-FIFTH:     Due to Galante's animus against Plaintiff, when she returned from her Aunt's funeral, Szabo was irate with her because he had complications logging on to the meeting.

FIFTY-SIXTH:     Plaintiff explained to Szabo that she was out of work on approved leave for her Aunt's funeral and that she had suggested (prior to going to her Aunts Funeral) to Galante that he assign her White co-worker, Eric McDowell to support Virtual Meeting Requests in advance of the meeting.

FIFTY-SEVENTH:   However, in a deliberate retaliatory act of to harm Plaintiff's career, Galante refused.

FIFTY-EIGHTH:    Prior to attending her Aunt's funeral, Plaintiff notified Hopkins that she was afraid there may be complications while she was out of the office.

FIFTY-NINTH:     In reply, Hopkins advised Plaintiff that he had spoken with Galante and assured her not to worry, which demonstrates Galante willfully deceived Hopkins and Plaintiff.

SIXTIETH:     Galante's adverse treatment against Plaintiff was furthered when he assigned Help Desk tickets to support a Virtual Meeting to Plaintiff while she was on approved vacation.

SIXTY-FIRST:     When Plaintiff returned from her approved vacation, SCWA's employees were upset with her because they did not receive her support. Plaintiff was humiliated and embarrassed and had to explain to these employees that she was out on approved vacation.

SIXTY-SECOND:     Plaintiff then asked Galante why he assigned her tasks to complete while she was on approved vacation and he told her he did not forget she was on vacation, clearly demonstrating that his adverse actions against her were willful and motivated with discriminatory and retaliatory intent to cause harm to her career.

SIXTY-THIRD:     Plaintiff formally complained to Mancuso that Galante was discriminating against her based on race and age and retaliating against her as despite knowing she was on approved vacation from May 8- May 14, 2020, he assigned her to support staff via the Help Desk.

SIXTY-FOURTH:     Plaintiff had the email where Galante approved her vacation, and stated he would record it on the calendar.  And in addition, that she set up an "out of office" email that stated she was away.

SIXTY-FIFTH:     No action was taken by Mancuso or by SCWA's attorneys who were purportedly investigating Plaintiff's formal complaints of race, age and retaliation as for and against her by Galante.

SIXTY-SIXTH:     On June 20, 2020, Galante's adverse actions against Plaintiff continued when Plaintiff clocked into work late and so stayed an hour late, which was normal

course of procedure and even was covered under the Flex program, Galante told Plaintiff he would not pay her for staying later because she did not obtain prior approval from him.

SIXTY-SEVENTH:   The adverse treatment by Galante as for against Plaintiff continued on or about June 23, 2020, when once again, he harassed Plaintiff about her use of Flex time and told Plaintiff to provide proof of her son's need to be picked up/dropped off from either camp, school, or the sitter.

SIXTY-EIGHTH:   While Plaintiff's similarly situated White younger co-workers were granted the use of Flex time by Galante without providing any documentation and two of them even requested to arrive early and leave early to avoid traffic and was approved by Galante.

SIXTY-NINTH:   Continued adverse treatment by Galante as for against Plaintiff continued on or about July 7, 2020, when he abruptly stopped a job without notifying Plaintiff, disabled her user-ID without notification to her and removed her access to a Directory that she created and stored her code in, which he never did to any of Plaintiff's similarly situated White younger co-workers.

SEVENTIETH:   Galante's adverse actions against Plaintiff is further demonstrated when on or about July 10, 2020, he deactivated Plaintiff's SQL Server Migration Tool and stopped a migration that had been running for two days, that purposefully destroyed two days of processing and he refused to meet with Plaintiff which is against SCWA's open-door policy.

SEVENTY-FIRST:   And when she formally complained to him of this, Galante never responded.

SEVENTY-SECOND:   Additional retaliatory adverse actions against Plaintiff included permitting Plaintiff's similarly situated White younger co-workers to work from home to care for their children and receiving their salary's while denying Plaintiff the same workplace

11

practice and if Plaintiff was going to work from home Mancuso told her she would not receive full pay.

SEVENTY-THIRD:  Further retaliatory treatment by Galante included his increased supervision of Plaintiff as compared to Plaintiff's similarly situated White younger co-workers as he would send e-mails, only to Plaintiff, requesting she explain to him what she had been doing for the past two weeks.

SEVENTY-FOURTH:      Plaintiff was directed by Galante to do Technical Writing, with no training, and after she wrote the course, sent a copy to SCWA's Training Manager, Michael Dileone (Dileone) to evaluate.

SEVENTY-FIFTH:   Dileone e-mailed Plaintiff and told her that the course was very good and looked like she had years of experience.

SEVENTY-SIXTH:   However, to further demonstrate Galante's retaliatory animus against Plaintiff, he constantly told her that the course was not satisfactory even though Plaintiff sent him Dileone's e-mail.

SEVENTY-SEVENTH:      On August 8, 2020, Plaintiff filed her Charge with the EEOC.

SEVENTY-EIGHTH: On or about September 18, 2020, defendants counsel received a copy of the EEOC Charge and sent correspondence to plaintiff's counsel indicating the same.

SEVENTY-NINTH:   On February 24, 2020, Hopkins and Milazzo had met with Plaintiff and told her she would work on SCWA's MS Teams and SQL Server, both of which were being used in different departments.

EIGHTIETH: Plaintiff was sent to training in September 2020 and in October 2020, at ONLC Training Center in Bohemia-New York for MS Teams and SQL Server.

EIGHTY-FIRST:     In addition, Plaintiff was advised that she would be trained on different products and given various projects to complete, such as MS Teams, the Web and others.

EIGHTY-SECOND:  Plaintiff wrote SCWA's MS Teams course, Student Handbook, and prepared a video.  SCWA's Training Manager, Mike Dileon advised Plaintiff that she did "a great job" and could not believe it was her first time performing these position responsibilities.

EIGHTY-THIRD:     Plaintiff was advised that she would continue to work with the Lab as SCWA migrated from Oracle to SQL Server and she successfully completed the first phase.

EIGHTY-FOURTH:  However, in a further act of retaliation against Plaintiff, Galante abruptly stopped the migration and deleted her user-ID, which delayed the project and she had to start it over from the start.

EIGHTY-FIFTH:     Despite this delay, and without having coding experience, Plaintiff coded hundreds of SCWA's programs successfully and are now ready to run for Phase 2 of the project which is testing the migration against the DEV database.

EIGHTY-SIXTH:     However, Galante did not allow Plaintiff to work with the Lab and did this intentionally so that it appeared that Plaintiff had not completed the project despite confirmation correspondence that Plaintiff had completed the lab tasks months ago.

EIGHTY-SEVENTH: Plaintiff repetitively asked Galante if she could contact the Lab to let them know she had completed her portion so that they were able to do their necessary steps.

EIGHTY-EIGHTH:    Galante would purposefully leave her out of meetings to sabotage her career in direct retaliation of her charges that he discriminated against her due to her age and race.

EIGHTY-NINTH:     A week before being terminated, Plaintiff was assigned to work from home.

NINETIETH: Galante's retaliation against Plaintiff continued as he sabotaged her Remote Desktop Connection by not authorizing her to connect to SCWA's System to perform her job.

NINETY-FIRST:     Without the connection she had no access to the work she had been doing and this required her to start from beginning.

NINETY-SECOND:  On November 6, 2020, Plaintiff was terminated under the pretext that her position was eliminated.

NINETY-THIRD:     On or about August 8, 2020 plaintiff filed a Charge with the EEOC and received Charge number 520-2020-04959.

NINETY-FOURTH:  On or about November 18, 2020, Plaintiff filed an Amended Charge with the EEOC.

NINETY-FIFTH:     On or about June 16, 2021, Plaintiff received a right to sue letter from the EEOC bearing Charge Number 520-2020-04959.

NINETY-SIXTH:     Plaintiff filed her Federal Complaint within Ninety (90) days of receipt of her Right to Sue Letter.

NINETY-SEVENTH: To date, plaintiff continues to suffer harm due to the defendants' discriminatory and retaliatory treatment.

**<u>AS AND FOR PLAINTIFF'S FIRST CASUE OF ACTION AGAINST SCWA FOR RACE  DISCRIMINATION IN VIOLATION OF TITLE VII.</u>**

NINETY-EIGHTH:  Plaintiff hereby repeats and realleges the allegations contained in the preceding paragraphs with the same force and effect as though set forth at length herein.

NINETY-NINTH:   Plaintiff, at all relevant times herein, was a member of a protected class under Title VII.

ONE HUNDREDTH: Plaintiff, at all times relevant herein, was qualified in her employment position with Defendant SCWA.

ONE HUNDRED FIRST:   Plaintiff was subjected to adverse employment actions and to a hostile work environment as set forth above because of Plaintiff's race.

ONE HUNDRED SECOND: As a proximate result of SCWA's discriminatory acts, Plaintiff has suffered and will continue to suffer substantial losses including, but not limited to: deprivation of equal employment opportunities; loss of past and future earnings and other employment benefits; stains to employment reputation; damages to her ability to secure similar employment in the future.

ONE HUNDRED THIRD:   SCWA acted intentionally and with malice and reckless indifference to Plaintiff's statutorily protected rights.

ONE HUNDRED FOURTH: As a proximate result of SCWA's discriminatory actions, Plaintiff has suffered and continues to suffer severe and lasting emotional distress, embarrassment, humiliation, mental and physical anguish.

**AS AND FOR PLAINTIFF'S SECOND CASUE OF ACTION AGAINST SCWA FOR RETALIATION IN VIOLATION OF TITLE VII**

ONE HUNDRED FIFTH:   Plaintiff hereby repeats and realleges the allegations contained in the preceding paragraphs with the same force and effect as though set forth at length herein.

ONE HUNDRED SIXTH:   Plaintiff engaged in protected activity by reporting discriminatory conduct to her supervisors.

ONE HUNDRED SEVENTH:      As a result of plaintiff's engagement in protected activity, SCWA began a series of retaliatory treatment directed towards plaintiff.

ONE HUNDRED EIGHTH: The retaliatory and adverse employment actions conducted against plaintiff occurred close in temporal proximity, to plaintiff's first engagement in protected activity.

ONE HUNDRED NINTH:     SCWA acted knowingly, intentionally and with malicious intent altered the terms of plaintiff's employment in direct retaliation of her engagement in protected activity in direct violation of Title VII.

ONE HUNDRED TENTH:   As a proximate result of SCWA's discriminatory acts, Plaintiff has suffered and will continue to suffer substantial losses including, but not limited to: deprivation of equal employment opportunities; loss of past and future earnings and other employment benefits; stains to their employment reputation; damages to their ability to secure similar employment in the future.

ONE HUNDRED ELEVENTH:      As a proximate result of SCWA's discriminatory actions, Plaintiff has suffered and continues to suffer severe and lasting emotional distress, embarrassment, humiliation, mental and physical anguish.

### AS AND FOR PLAINTIFF'S THIRD CAUSE OF ACTION AGAINST SCWA FOR AGE DISCRIMINATION IN VIOLATION OF THE ADEA

ONE HUNDRED TWELFTH:       Plaintiff hereby repeats and realleges the allegations contained in the preceding paragraphs with the same force and effect as though set forth at length herein.

ONE HUNDRED THIRTEENTH:   Plaintiff, at all relevant times herein, was a member of a protected class under the ADEA as Plaintiff was over the age of Forty (40).

ONE HUNDRED FOURTEENTH:   Plaintiff, at all times relevant herein, was qualified in her employment position with Defendant SCWA.

ONE HUNDRED FIFTEENTH:      Plaintiff was subject to adverse employment actions and to a hostile work environment as set forth above because of Plaintiff's age.

ONE HUNDRED SIXTEENTH:      SCWA acted intentionally and with malice and reckless indifference to Plaintiff's statutorily protected rights.

ONE HUNDRED SEVENTEENTH: As a proximate result of SCWA's discriminatory acts, Plaintiff has suffered and will continue to suffer substantial losses including, but not limited to: deprivation of equal employment opportunities; loss of past and future earnings and other employment benefits; stains to their employment reputation; damages to their ability to secure similar employment in the future.

ONE HUNDRED EIGHTEENTH:   As a proximate result of SCWA's discriminatory actions, Plaintiff has suffered and continues to suffer severe and lasting emotional distress, embarrassment, humiliation, mental and physical anguish.

## AS AND FOR PLAINTIFF'S FOURTH CASUE OF ACTION AGAINST SCWA FOR RETALIATION IN VIOLATION OF THE ADEA

ONE HUNDRED NINETEENTH:   Plaintiff hereby repeats and realleges the allegations contained in the preceding paragraphs with the same force and effect as though set forth at length herein.

ONE HUNDRED TWENTIETH:      Plaintiff engaged in protected activity by reporting discriminatory conduct to her supervisors.

ONE HUNDRED TWENTY-FIRST:As a result of plaintiff's engagement in protected activity, SCWA began a series of retaliatory treatment directed towards plaintiff.

ONE HUNDRED TWENTY-SECOND:     The retaliatory and adverse employment actions conducted against plaintiff occurred close in temporal proximity, to plaintiff's first engagement in protected activity.

ONE HUNDRED TWENTY-THIRD:     SCWA acted knowingly, intentionally and with malicious intent altered the terms of plaintiff's employment in direct retaliation of her engagement in protected activity in direct violation of the ADEA.

ONE HUNDRED TWENTY-FOURTH:     As a proximate result of SCWA's retaliatory acts, Plaintiff has suffered and will continue to suffer substantial losses including, but not limited to: deprivation of equal employment opportunities; loss of past and future earnings and other employment benefits; stains to their employment reputation; damages to their ability to secure similar employment in the future.

ONE HUNDRED TWENTY-FIFTH:     As a proximate result of SCWA's retaliatory actions, Plaintiff has suffered and continues to suffer severe and lasting emotional distress, embarrassment, humiliation, mental and physical anguish.

## AS AND FOR PLAINTIFF'S FIFTH CAUSE OF ACTION AGAINST SCWA FOR RACE DISCRIMINATION IN VIOLATION OF NYEL

ONE HUNDRED TWENTY-SIXTH:     Plaintiff hereby repeats and realleges the allegations contained in the preceding paragraphs with the same force and effect as though set forth at length herein.

ONE HUNDRED TWENTY-SEVENTH:     Plaintiff, at all relevant times herein, was a member of a protected class.

ONE HUNDRED TWENTY-EIGHTH:     Plaintiff, at all times relevant herein, was qualified in her employment position with Defendant SCWA.

ONE HUNDRED TWENTY-NINTH:     Plaintiff was subjected to adverse employment actions and to a hostile work environment as set forth above because of Plaintiff's race.

ONE HUNDRED THIRTIETH:     As a proximate result of SCWA's discriminatory acts, Plaintiff has suffered and will continue to suffer substantial losses including, but not limited to: deprivation of equal employment opportunities; loss of past and future earnings and other employment benefits; stains to their employment reputation; damages to their ability to secure similar employment in the future.

ONE HUNDRED THIRTY-FIRST: As a proximate result of SCWA's discriminatory actions, Plaintiff has suffered and continues to suffer severe and lasting emotional distress, embarrassment, humiliation, mental and physical anguish.

## AS AND FOR PLAINTIFF'S SIXTH CASUE OF ACTION AGAINST SCWA FOR AGE DISCRIMINATION IN VIOLATION OF NYEL

ONE HUNDRED THIRTY-SECOND:     Plaintiff hereby repeats and realleges the allegations contained in the preceding paragraphs with the same force and effect as though set forth at length herein.

ONE HUNDRED THIRTY-THIRD: Plaintiff, at all relevant times herein, was a member of a protected class as she was over the age of Forty (40).

ONE HUNDRED THIRTY-FOURTH:     Plaintiff, at all times relevant herein, was qualified in her employment position with Defendant SCWA.

ONE HUNDRED THIRTY-FIFTH: Plaintiff was subjected to adverse employment actions and to a hostile work environment as set forth above because of Plaintiff's age.

19

ONE HUNDRED THIRTY-SIXTH: As a proximate result of SCWA's discriminatory acts, Plaintiff has suffered and will continue to suffer substantial losses including, but not limited to: deprivation of equal employment opportunities; loss of past and future earnings and other employment benefits; stains to their employment reputation; damages to their ability to secure similar employment in the future.

ONE HUNDRED THIRTY-SEVENTH:   As a proximate result of SCWA's discriminatory actions, Plaintiff has suffered and continues to suffer severe and lasting emotional distress, embarrassment, humiliation, mental and physical anguish.

## AS AND FOR PLAINTIFF'S SEVENTH CASUE OF ACTION AGAINST SCWA FOR RETALIATION IN VIOLATION OF NYEL

ONE HUNDRED THIRTY-EIGHTH:     Plaintiff hereby repeats and realleges the allegations contained in the preceding paragraphs with the same force and effect as though set forth at length herein.

ONE HUNDRED THIRTY-NINTH: Plaintiff engaged in protected activity by reporting discriminatory conduct to her supervisors.

ONE HUNDRED FORTIETH:     As a result of plaintiff's engagement in protected activity, the defendants began a series of retaliatory treatment directed towards plaintiff.

ONE HUNDRED FORTY-FIRST:   The retaliatory and adverse employment actions conducted against plaintiff occurred close in temporal proximity, to plaintiff's first engagement in protected activity.

ONE HUNDRED FORTY-SECOND:     SCWA acted knowingly, intentionally and with malicious intent altered the terms of plaintiff's employment in direct retaliation of her engagement in protected activity in direct violation of NYEL.

ONE HUNDRED FORTY-THIRD:  As a proximate result of SCWA's discriminatory acts, Plaintiff has suffered and will continue to suffer substantial losses including, but not limited to: deprivation of equal employment opportunities; loss of past and future earnings and other employment benefits; stains to their employment reputation; damages to their ability to secure similar employment in the future.

ONE HUNDRED FORTY-FOURTH:    As   a   proximate   result   of   SCWA discriminatory actions, Plaintiff has suffered and continues to suffer severe and lasting emotional distress, embarrassment, humiliation, mental and physical anguish.

### AS AND FOR PLAINTIFF'S  EIGHTH CAUSE OF ACTION AGAINST GALANTE FOR RACE DISCRIMINATION IN VIOLATION OF NYEL

ONE HUNDRED FORTY-FIFTH:   Plaintiff hereby repeats and realleges the allegations contained in the preceding paragraphs with the same force and effect as though set forth at length herein.

ONE HUNDRED FORTY-SIXTH:  Plaintiff, at all relevant times herein, was a member of a protected class.

ONE HUNDRED FORTY-SEVENTH:    Plaintiff, at all times relevant herein, was qualified in her employment position with Defendant SCWA.

ONE HUNDRED FORTY-EIGHTH:    Plaintiff   was   subjected   to   adverse employment actions and to a hostile work environment as set forth above because of Plaintiff's race.

ONE HUNDRED FORTY-NINTH: As a proximate result of Galante's discriminatory acts, Plaintiff has suffered and will continue to suffer substantial losses including, but not limited to: deprivation of equal employment opportunities; loss of past and future earnings and other

employment benefits; stains to their employment reputation; damages to their ability to secure similar employment in the future.

ONE HUNDRED FIFTIETH:     As a proximate result of Galante's discriminatory actions, Plaintiff has suffered and continues to suffer severe and lasting emotional distress, embarrassment, humiliation, mental and physical anguish.

## AS AND FOR PLAINTIFF'S NINTH CASUE OF ACTION AGAINST GALANTE FOR AGE DISCRIMINATION IN VIOLATION OF NYEL

ONE HUNDRED FIFTY-FIRST:     Plaintiff hereby repeats and realleges the allegations contained in the preceding paragraphs with the same force and effect as though set forth at length herein.

ONE HUNDRED FIFTY-SECOND: Plaintiff, at all relevant times herein, was a member of a protected class as she was over the age of Forty (40).

ONE HUNDRED FIFTY-THIRD:    Plaintiff, at all times relevant herein, was qualified in her employment position with Defendant SCWA.

ONE HUNDRED FIFTY-FOURTH: Plaintiff was subjected to adverse employment actions and to a hostile work environment as set forth above because of Plaintiff's age.

ONE HUNDRED FIFTY-FIFTH:     As a proximate result of Galante's discriminatory acts, Plaintiff has suffered and will continue to suffer substantial losses including, but not limited to: deprivation of equal employment opportunities; loss of past and future earnings and other employment benefits; stains to their employment reputation; damages to their ability to secure similar employment in the future.

ONE HUNDRED FIFTY-SIXTH:    As a proximate result of Galante's discriminatory actions, Plaintiff has suffered and continues to suffer severe and lasting emotional distress, embarrassment, humiliation, mental and physical anguish.

## AS AND FOR PLAINTIFF'S TENTH CASUE OF ACTION AGAINST GALANTE FOR RETALIATION IN VIOLATION OF NYEL

ONE HUNDRED FIFTY-SEVENTH:       Plaintiff hereby repeats and realleges the allegations contained in the preceding paragraphs with the same force and effect as though set forth at length herein.

ONE HUNDRED FIFTY-EIGHTH:  Plaintiff engaged in protected activity by reporting discriminatory conduct to her supervisors.

ONE HUNDRED FIFTY-NINTH:    As a result of plaintiff's engagement in protected activity, the defendants began a series of retaliatory treatment directed towards plaintiff.

ONE HUNDRED SIXTIETH:        The retaliatory and adverse employment actions conducted against plaintiff occurred close in temporal proximity, to plaintiff's first engagement in protected activity.

ONE HUNDRED SIXTY-FIRST:    Galante acted knowingly, intentionally and with malicious intent altered the terms of plaintiff's employment in direct retaliation of her engagement in protected activity in direct violation of NYEL.

ONE HUNDRED SIXTY-SECOND:As a proximate result of Galante's discriminatory acts, Plaintiff has suffered and will continue to suffer substantial losses including, but not limited to: deprivation of equal employment opportunities; loss of past and future earnings and other employment benefits; stains to their employment reputation; damages to their ability to secure similar employment in the future.

ONE HUNDRED SIXTY-THIRD:   As a proximate result of Galante's discriminatory actions, Plaintiff has suffered and continues to suffer severe and lasting emotional distress, embarrassment, humiliation, mental and physical anguish.

ONE HUNDRED SIXTY-FOURTH:

**WHEREFORE,** Plaintiff demands judgment against the defendants as follows:

1. For a money judgment representing actual damages against SCWA for its violation of plaintiff's rights under Title VII.

2. For a money judgment representing compensatory damages against SCWA for its violation of plaintiff's rights under Title VII.

3. For a money judgment representing punitive damages against SCWA for their violation of plaintiff's rights under Title VII.

4. For a money judgment representing actual damages against SCWA for its violation of plaintiff's rights under the ADEA.

5. For a money judgment representing compensatory damages against SCWA for its violation of plaintiff's rights under the ADEA.

6. For a money judgment representing punitive damages against SCWA for their violation of plaintiff's rights under the ADEA.

7. For a money judgment representing actual damages against SCWA for its violation of plaintiff's rights under NYEL.

8. For a money judgment representing compensatory damages against SCWA for its violation of plaintiff's rights under NYEL.

9.     For a money judgment representing punitive damages against SCWA for their violation of plaintiff's rights under NYEL.

10.     For a money judgment representing actual damages against Galante for his violation of plaintiff's rights under NYEL.

11.     For a money judgment representing compensatory damages against Galante for hia violation of plaintiff's rights under NYEL.

12.     For a money judgment representing punitive damages against Galante for his violation of plaintiff's rights under NYEL.

13.     For equitable and injunctive relief;

14.     For reasonable attorney's fees and costs; and

15.     For such other relief as the Court may deem just and proper.

## JURY DEMAND

**Plaintiff hereby demands a trial by jury of all issues in this action.**

Dated: Islandia, New York
      September 13,  2021

**SCOTT MICHAEL MISHKIN, P.C.**

By:    Paul A. Carruthers, Esq.
       One Suffolk Square, Suite 240
       Islandia, New York 11749
       Telephone:  631-234-1154
       Facsimile:  631-234-5048
       *Attorneys for Plaintiff*